UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Duron Holmes, ) | Civil Action No.: 5:17-cv-01531-RBH |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| Acting Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff Duron Holmes ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for supplemental security income ("SSI") pursuant to the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #17]. Plaintiff filed objections to the Magistrate Judge's recommendation. [ECF #19]. Defendant responded to these objections. [ECF #22].

**Factual Findings and Procedural History**

Plaintiff was born on June 2, 1965 and was fifty years old on the date of the ALJ's decision. He alleges an onset disability date starting on May 1, 2012. [ECF #12, p. 3]. Plaintiff alleges disability due to chronic back pain, pain in his right arm and wrist, anxiety, depression, dizziness when standing, diabetes, and hypothyroidism. [ECF #10-7, Ex. B2E]. Plaintiff also alleges mental impairments, including anxiety, depression, vertigo, pain, and worsening issues with balance. According to Plaintiff's medical records and testimony, it appears that during October of 2008, Plaintiff had a CT scan of his

right wrist which showed degenerative changes, as well as degenerative changes in the disc spaces in his lower back and thoracic spine. [ECF #10-9, Ex. B1F]. Plaintiff continued to experience back pain during treatment. Dr. Stephen Worsham noted in his records that Plaintiff suffered a non-displaced T12 fracture due to a car accident in 2008. [ECF #10-9, Ex. B1F]. Plaintiff's medical records further indicate he suffered from intermittent psoriasis and arthritis of the knees, hips, and wrist. [ECF #10-9, Ex. B1F]. Lab results from August of 2011 indicate a onset of hypothyroidism. [ECF #10-9, Ex. B1F]. In 2012, Dr. Worsham continued to treat Plaintiff for issues related to these medical problems. [ECF #10-9, Ex. B1F]. Dr. Worsham later assessed Plaintiff as being morbidly obese and noted that Plaintiff had not been compliant in monitoring and recording his blood sugars or adhering to his dietary restrictions, although he had previously lost some weight. [ECF #10-9, Ex. B1F]. On July 27, 2012, an MRI revealed degenerative changes in Plaintiff's back and an old fracture of the L1 vertebral body.[ECF #10-9, Ex. B1F]. At a follow up visit a few months later, Plaintiff described difficulties related to his arthritis, and Dr. Worsham noted that Plaintiff was not compliant with checking his blood sugars, though Plaintiff was borderline diabetic. [ECF #10-9, Ex. B1F]. On January 22, 2013, Plaintiff underwent an oximetry study after having been previously evaluated by Dr. Gordon Early. Dr. Early diagnosed Plaintiff with obstructive sleep apnea, chronic back pain, and polyarthritis. [ECF #10-10, Ex. B13F]. Plaintiff's oximetry study qualified him for oxygen using Medicare guidelines. [ECF #10-10, Ex. B13F].

Dr. Early provided a statement indicating that he thought Plaintiff could do work "more substantial" than intermittent sedentary work.[1] Dr. Early further indicated that Plaintiff would most likely qualify for a CPAP machine if he underwent a formal sleep study, and if his obstructive sleep

---

[1] This Court notes that in his brief, Plaintiff incorrectly indicates that Dr. Early's statement was that he did *not* think Plaintiff could do work more substantial than sedentary. [ECF #12, p. 6].

2

apnea were treated, his somnolence and impaired mentation would improve. [ECF #10-10, Ex. B15F]. On November 14, 2013, Dr. Benjamin Bailey evaluated Plaintiff and noted his previous history included diabetes mellitus, hypertension, hypothyroidism, hyperlipidemia, psoriasis, chronic pain, and arthritis. [ECF #10-10, Ex. B6F]. Dr. Bailey continued to treat Plaintiff through 2014 for issues related to psoriasis and continued pain in his back, wrist and shoulder. Dr. Bailey completed a statement form dated March 25, 2015, indicating a primary disability diagnosis due to chronic pain and that his disability was "permanent." [ECF #10-10, Ex. B7F]. He further provided a letter dated October 6, 2015, explaining that he has treated Plaintiff since November 2013 and diagnosed him with chronic pain. Dr. Bailey also indicated that Plaintiff's financial situation made it difficult for him to arrange a sleep study. [ECF #10-10, Ex. B11F]. Dr. Stuart Barnes performed a consultative examination of Plaintiff and diagnosed him with chronic back pain, obesity, anxiety, depression, and psoriasis. [ECF #10-9, Ex. B3F]. Dr. Rebecca L. Sorrow performed a mental status evaluation at the Commissioner's request. Dr. Sorrow diagnosed Plaintiff with persistent depressive disorder and alcohol dependence in sustained remission. [ECF #10-9, Ex. B4F]. At the hearing, Plaintiff testified that he uses a walking cane when he goes to Walmart to pick up his medications. He further testified that he tries to help around the house when his back is not causing him pain, that he no longer leaves the house to shop, and that he spends his time watching television or using his laptop. He testified that his pain is triggered by sitting or standing too long. He also described his issues with depression.

On August 22, 2013, Plaintiff protectively filed for SSI under Title XVI of the Act. The Social Security Administration denied Plaintiff's application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). The ALJ denied Plaintiff's claim on May 10, 2016, finding that Plaintiff was not under a disability as defined in the Social Security Act,

as amended. [ECF #10-2, R. 45]. The ALJ's findings were as follows:

> (1) The claimant has not engaged in substantial gainful activity since August 22, 2013, the application date. (20 CFR 416.971 *et seq.*).
>
> (2) The claimant has the following severe impairments: lumbosacral degenerative disc disease with spondylolisthesis; status post fracture of L1 vertebral body; right wrist degenerative joint disease and status post right arm open reduction internal fixation (ORIF); obesity; psoriasis; sleep apnea; reactive airway disease; intellectual disorder; anxiety; and, depression (20 CFR 416.920©).
>
> (3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional limitations. He can sit or stand at will consistent with the exertional level while remaining at the workstation, provided that each period of sitting or standing is at least fifteen minutes. He requires a handheld assistive device (such as a cane) to ambulate over narrow, slippery, or erratically moving surfaces, or for ascending or descending slopes, but the handheld assistive device would not be necessary for standing. He can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, crawl, kneel, and balance. He can have no exposure to workplace hazards such as unprotected heights and moving mechanical parts. He can frequently reach, both overhead and in all other directions, with the dominant right upper extremity. He can frequently handle, finger, and feel with the dominant right hand. He can frequently use hand controls on the right. He can occasionally use foot controls bilaterally. He can have occasional exposure to atmospheric conditions. He can have no open exposure to toxic or caustic chemicals. He can frequently interact with supervisors and coworkers and occasionally interact with the public. He is able to understand, remember, and carry out simple one or two step instructions or tasks, or detailed but uninvolved instructions or tasks, free of fast-paced or team-dependent production requirements, involving simple work-related decisions and occasional, if any, workplace changes. He would be off task a maximum of ten percent of the workday.

> (5) The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> (6) The claimant was born on June 2, 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).
>
> (7) The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> (8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> (10) The claimant has not been under a disability, as defined in the Social Security Act, since August 22, 2013, the date the application was filed (20 CFR 416.920(g)).

[ECF #10-2, pp. 18-46].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. On June 12, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #12; ECF #13; ECF #14], and the Magistrate Judge issued her Report and Recommendation on September 18, 2018, recommending that the Commissioner's decision be affirmed. [ECF #17, p. 22]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act

during the relevant time period. Plaintiff filed objections on October 2, 2018. [ECF #19]. Defendant responded to these objections on October 15, 2018. [ECF #22].

## Standard of Review

**I.     Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

6

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

### Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish

a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment;

(3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work;[3] and (5) whether the impairment prevents him from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

9

of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ made a proper RFC determination in this case. Plaintiff contends that a function-by-function assessment was not done in this case. Plaintiff further argues that the ALJ improperly gave the opinions of two physicians little weight while giving other opinions moderate weight. Plaintiff further objects to the Magistrate Judge's recommendation that the ALJ's decision was adequate because of the "boilerplate reference" statements used by the ALJ. Plaintiff also objects to the Magistrate Judge's rejection of Dr. Early's opinion.

Social Security Ruling 96-8p explains how adjudicators should assess a claimant's residual functional capacity ("RFC"). SSR 96-8p, 1996 WL 374184 (July 2, 1996). First, an ALJ must identify the individual's functional limitations or restrictions and assess work-related abilities on a function-by-function basis. SSR 96-8p. The ALJ must also determine how an individual's limitations or impairments affect his ability to meet the physical and mental demands of work on a regular and continuing basis. SSR 96-8p. Upon completion and explanation of this analysis, the RFC may be expressed in terms of exertional levels of work, and the assessment must include a discussion describing how the evidence in the record supports the RFC, specifically citing to medical facts and non-medical evidence. SSR 96-8p. The RFC is not the *least* an individual can do, but rather the *most* an individual can do, despite his or her limitations. SSR 96-8p. In *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015), the Fourth Circuit determined that a per se rule requiring remand whenever an ALJ

10

fails to perform a function-by-function assessment. However, as aptly pointed out by Plaintiff, where an ALJ fails to discuss a claimant's capacity to perform relevant functions, despite contradictory evidence found in the record or where other inadequacies frustrate a meaningful review, remand may be appropriate. *Id.* at 636. *Mascio* reinforces the guidelines instructing an ALJ to assess a claimant's capacity to perform relevant functions. These functions include those found in 20 C.F.R. § 404.1545(b)-(d) and 20 C.F.R. § 404.945(b)-(d), including both physical and mental abilities. In explaining the RFC, the ALJ stated that Plaintiff had the ability to perform light work, with several additional, detailed limitations. The ALJ then discussed each of Plaintiff's impairments in detail, including his back impairment, his right arm impairment, his psoriasis, his reactive airway disease, and his sleep apnea. In discussing each impairment, the ALJ provided a detailed discussion of how the medical evidence compared with Plaintiff's complaints to determine any further limitations included within the RFC. The ALJ also explained the Plaintiff's testimony and the extent to which is supported specific limitations. The ALJ thus went through each of Plaintiff's impairments and considered the medical evidence and testimony to consider how these impairments affect his residual functional capacity.

To lend support to the argument that the ALJ did not adequately assess Plaintiff's functional limitations, Plaintiff argues that both Dr. Gordon Early and Dr. Benjamin Bailey provided medical opinions that support greater limitations than the ability to perform light work.[4] Plaintiff argues that the ALJ did not properly consider the functional limitations supported by these opinions because the ALJ

---

[4] Dr. Early evaluated Plaintiff for issues related to his sleep apnea and ordered Plaintiff to undergo a sleep evaluation. After reviewing the results of the sleep study, Dr. Early provided a statement where he opined that Plaintiff could perform work more substantial than sedentary "intermittently." Dr. Early further indicated that Plaintiff would likely qualify for a CPAP and that if his obstructive sleep apnea were treated, Plaintiff's daytime somnolence and impaired mental functioning would improve. Dr. Bailey provided a medical statement on a form document, and later provided a very concise later explaining that he could not confirm a diagnosis of obstructive sleep apnea without a definitive sleep study. As noted by the ALJ, there were financial concerns that may have impacted the ability to obtain a sleep study.

11

disregarded these opinions but gave more weight to other physician opinions who also did not provide significant detail on functional limitations. The ALJ specifically discussed both Dr. Early and Dr. Bailey's statements and opinions and gave several reasons for giving those opinions limited weight. The ALJ discussed Dr. Early's diagnosis of Plaintiff and noted that he was an examining source who met with Plaintiff one time and based his opinion off that interaction and the oximetry study. The ALJ explained that the opinion was "somewhat equivocal" and noted that Dr. Early believed Plaintiff's condition would improve if treated. The ALJ further noted that Dr. Early's opinion did not address other impairments, such as Plaintiff's spinal issues, and some of his opinions did not appear supported by the rest of the evidence of record. With respect to Dr. Bailey's opinion, the ALJ noted it was a checkbox form without any clear basis for the noted limitations, nor any additional comments by Dr. Bailey. The ALJ also noted that his opinions were not supported by the medical records, specifically his own treatment notes. Thus, the ALJ gave several reasons, beyond the failure to give specific functional limitations, in assessing the weight given to those opinions. Further, in discussing Dr. Early's opinion, the ALJ found significant that Dr. Bailey could not confirm Dr. Early's diagnosis of sleep apnea. Nonetheless, the ALJ also indicated that even though Dr. Bailey would not confirm the same diagnosis, he still considered the sleep apnea as a medically-determinable impairment. Though the vocational effects of the disorder did not seem to extend beyond waking up at night, the ALJ specifically noted Plaintiff's financial difficulties in participating in a sleep study and still considered sleep apnea in assessing the RFC.

The discussion by the ALJ in his decision was a thorough and adequate explanation of the functional limitations found within the RFC, as required by the Social Security guidelines. Moreover, the ALJ discussed both the opinion of Dr. Early and Dr. Bailey in great detail. He explained that Dr.

12

Early was an examining source, rather than a treating physician. He further explained that Dr. Early did not clarify or specifically address Plaintiff's capabilities or whether his statement regarding sedentary activity was based on an observation of Plaintiff's actual activity level or not. This Court acknowledges Plaintiff's point that a function-by-function analysis is critical in this case because, based on Plaintiff's age, as well as other factors, the Grid Rules might otherwise direct a finding of disability. Nonetheless, substantial evidence supports a finding that the ALJ indeed performed a thorough analysis in determining Plaintiff's RFC. The ALJ apparently found it significant that Dr. Bailey's statement was not supported by his own treatment notes for Plaintiff. In determining the RFC, the ALJ clearly considered all the medical evidence of record, and discussed the RFC based on the specific functions the ALJ believed Plaintiff could perform. Therefore, in reviewing the decision and paying particular attention to the ALJ's discussion of the physician opinions, this Court does not find reversible error in the explanation of the RFC provided by the ALJ.

Plaintiff also argues that the ALJ's use of "boilerplate references" are insufficient to support an RFC determination. *See generally Arant v. Colvin*, No. 2:14-1539-MGL, 2015 WL 578544, at *2 (D.S.C. Sept. 29, 2015). In his decision, an ALJ must adequately explain each of a claimant's impairments, including the cumulative effect the impairments have on an ability to work. *Walker v. Bowen*, 889 F.2d 47, 48-50 (4th Cir. 1989). While this Court agrees that the use of boilerplate language, without any additional analysis indicating the ALJ considered all of Plaintiff's impairments, may be insufficient to support an ALJ's decision, the ALJ did not simply rely upon this boilerplate language in his decision. First, after giving a detailed explanation of the reasons for finding that Plaintiff had several severe impairments, the ALJ specifically stated that he considered each of Plaintiff's alleged impairments in combination in determining whether some of the non-severe

13

impairments could, in conjunction with the severe impairments, impact Plaintiff's RFC assessment. Second, in discussing the RFC assessment, clearly indicated in his decision that he considered Plaintiff's impairments together in determining the appropriate limitations to include in the RFC.[5] Within the decision, the ALJ also specifically considered the respiratory, sleep apnea, and obesity impairments together when discussing Plaintiff's RFC. The decision therefore reflects the fact that the ALJ specifically considered the effects of Plaintiff's impairments in tailoring the residual functional capacity to account for all of the claimant's functional limitations supported in the record. In reviewing the ALJ's decision, this Court therefore finds substantial evidence exists to support a finding that the ALJ provided more than mere boilerplate language to discuss Plaintiff's impairments and how these impairments translate into limitations within the RFC.

Finally, Plaintiff argues that the Magistrate Judge did not address the alleged errors in the ALJ's evaluation of Dr. Early's findings. While Plaintiff argues that Dr. Bailey's opinion did not support rejecting Dr. Early's opinion, the ALJ explained that he found it significant that Dr. Bailey, a treating physician, would not confirm Dr. Early's diagnosis based on a one time review of Plaintiff's sleep issues. Further, the ALJ noted that Dr. Bailey's own treatment notes did not include any notations to sleep issues. This Court does not find that the ALJ erred in considering Dr. Bailey's letter which clearly indicates he could not confirm or diagnose Plaintiff without a sleep study, which apparently Plaintiff could not afford.[6] The ALJ further pointed out that Dr. Bailey, who was a treating physician, was

---

[5] For example, the ALJ's decision includes the following statements: (1) "claimant's obesity exacerbated symptoms related to his spinal impairments;" (2) distractions from his mental impairments, in addition to pain and fatigue from his physical impairments also combined warrant a finding that he [Plaintiff] would be off task during the workday; (3) "all of these impairments similarly warrant significant and environmental restrictions." These statements lend support to the finding that the ALJ was considering all of Plaintiff's impairments together when assessing the RFC, as opposed to simply providing boilerplate verbiage.

[6] Plaintiff does not raise a specific objection as to Plaintiff's financial difficulties in obtaining treatment, beyond a statement that the evidence showed Plaintiff required additional testing he could not afford.

notably hesitant to confirm Dr. Early's diagnosis. The ALJ explained in his decision that despite Dr. Early's statement, the treatment notes from Plaintiff's treating physicians do not indicate any issues related to sleepiness or daytime somnolence. Plaintiff argues that the lack of treatment notes were a result of the doctors not recording his sleep issues. However, Plaintiff does not provided a basis for this conclusion. Further, this was not the only reason the ALJ rejected Dr. Early's opinion. Accordingly, the ALJ made the decision to consider his respiratory issues, as well as his sleep apnea in the RFC assessment, but did not otherwise find that the record supported the severity of this limitation that is alleged. Plaintiff alleges Dr. Early specifically addressed functional limitations because he referenced the definition of sedentary work, however the term "sedentary work" is found in the question Dr. Early was asked to answer. Dr. Early states Plaintiff could "do work *more substantial* than sedentary work intermittently," but he does not further explain functional limitations, beyond stating that Plaintiff occasionally lifts up to 20 pounds. Further, while Plaintiff argues that if the fact that Dr. Early was a one-time examiner was weighed against him, it should have been equally weighed against all other opinions, there is nothing in the decision that suggests the ALJ did not otherwise consider whether there was a treatment relationship with Plaintiff in assessing the other opinions. Plaintiff argues that Dr. Early relied on subjective reports and positive objective diagnostic tests which were not considered by the ALJ; however, Dr. Early's states that his opinions are based on "examining the patient on one occasion and reviewing his medical records." Despite Plaintiff's protestations to the contrary, the ALJ therefore adequately explained why he gave Dr. Early's opinion limited weight because it was not well-articulated, it was based on a one-time examination and an oximetry study, and because the record as a whole does not otherwise support the statements made by Dr. Early. This Court finds that the ALJ's decision is supported by substantial evidence, as the ALJ

gave a detailed explanation of his evaluation of Dr. Early's opinion, despite the fact that Plaintiff believes these opinions would have otherwise supported limitations requiring a finding of disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (it is not the court's function to reweigh evidence or substitute its judgment for the Commissioner's judgment).

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #17]. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
December 27, 2018  R. Bryan Harwell
 United States District Judge